UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERNESTO LOPEZ,

                Plaintiff,

   -against-

NEW YORK CITY POLICE DEPARTMENT
OFFICER GAMBLE, in his individual
capacity; NEW YORK CITY POLICE
DEPARTMENT OFFICER KAMALIC, in his
individual capacity; NEW YORK CITY
POLICE DEPARTMENT OFFICERS "JOHN
DOE" #1-6, in their individual capacities; THE
CITY OF NEW YORK,

                Defendants.

**COMPLAINT AND**
**JURY TRIAL DEMAND**

---

      Plaintiff Ernesto Lopez, by and through his attorneys, Emery Celli Brinckerhoff

Abady Ward & Maazel LLP, alleges as follows for his complaint:

**PRELIMINARY STATEMENT**

      1.      On June 3, 2020, while temporarily in New York City working as a

respiratory therapist in a Covid-19 hospital unit, Plaintiff Ernesto Lopez joined a peaceful protest

against police brutality in downtown Brooklyn.  Like millions of Americans across the country,

Mr. Lopez was outraged and dismayed by the images he had seen of unjustified police violence.

Sadly, his attempt to peacefully exercise his right to speak out about such violence was met by

the same brutal and unjustified police behavior against which he protested.

      2.      Around 9:00 p.m. that night, the peaceful protest Mr. Lopez had joined

was surrounded by New York Police Department ("NYPD") officers at Cadman Plaza in

Brooklyn.  Suddenly, unprovoked, and without warning, the officers violently assaulted and indiscriminately arrested protesters.

3.      Mr. Lopez witnessed Defendant John Doe #1 violently shove a nearby woman to the ground.  In response, Mr. Lopez protested, "Hey!" while continuing to hold a sign in one hand and record video with his phone in the other.  Mr. Lopez did not make any movements or present any threat to Defendant Doe #1 or others.  Defendant Doe #1 immediately turned to Mr. Lopez, pointed at him, and ordered, "Arrest him!"  Doe #1 gave no prior order to Mr. Lopez.

4.      Within seconds, Defendants Gamble and John Doe #2 brutally attacked Mr. Lopez from behind, striking his head with a baton and tackling him to the ground.  After Mr. Lopez was on the ground, Defendants Gamble and John Doe #2 forcefully restrained Mr. Lopez's hands, tying the zip ties so tightly that Mr. Lopez lost feeling in his hands.  Defendants Gamble and Doe #2 also caused Mr. Lopez's face mask to fall off during this assault.  Mr. Lopez wore the mask to protect himself from Covid-19.

5.      Mr. Lopez spent the next six hours in NYPD detention.  Despite repeated requests for medical attention for his injuries, including to his head, Mr. Lopez received none. The NYPD also refused Mr. Lopez's request for a face mask to protect against Covid-19.  As a result, Defendants put Mr. Lopez at serious risk of contracting this potentially deadly disease.

6.      When Mr. Lopez was finally released, Defendant Kamalic gave him a summons for violation of the curfew imposed on New York City the day before by Emergency Executive Order No. 119 (the "Executive Order").  The Executive Order, however, required an order to disperse; here there was none.  Mr. Lopez's summons was subsequently dismissed without explanation.

7.      Defendants' unlawful actions caused Mr. Lopez physical injuries and emotional distress that linger with him to this day.  Mr. Lopez now seeks redress for Defendants' unwarranted brutality and shameful abuse of authority.

## THE PARTIES

8.      Plaintiff Ernesto Lopez is a citizen of the United States and a 42-year-old man who currently resides in Tacoma, Washington.  At the time of the actions described in this Complaint, Mr. Lopez was staying in a hotel in Brooklyn, New York, while working on a temporary basis as a Covid-19 respiratory therapist in New York City.

9.      Defendant NYPD Officer Gamble, first name and shield number unknown, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Gamble was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

10.     Defendant NYPD Officer Kamalic, first name and shield number unknown, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Kamalic was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

11.     Defendants Police Officers John Does #1-6, names and shield numbers unknown, were each at all relevant times officers of the NYPD, and each was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, Defendants Does #1-6 were acting within the scope of their employment and under color of state law.  The Doe Defendants are sued in their individual capacities.

3

12.     Defendants Gamble, Kamalic, and John Does #1-6 are collectively referred to as the "Individual Defendants."

13.     Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York.  At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel, including Officers Gamble, Kamalic, and Does #1-6 obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

14.     This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

15.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

16.     The acts complained of occurred in the Eastern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

17.     Plaintiff demands trial by jury.

## FACTUAL ALLEGATIONS

### Mr. Lopez Travels to New York to Help with the Covid-19 Outbreak

18.     Plaintiff Ernesto Lopez is a 42-year-old respiratory therapist based in Tacoma, Washington.

19.     In April 2020, Mr. Lopez took a leave of absence from his full-time job at Virginia Mason Hospital in Seattle, Washington to work on the frontlines of the Covid-19 outbreak in New York City.

20.     At the time, New York City was the city in America worst hit by Covid-19.

21.     Mr. Lopez knew that his skills as a respiratory therapist were desperately needed in New York.

22.     Mr. Lopez accepted a short-term contract with NYU Langone Hospital's Covid-19 unit.

23.     Mr. Lopez's work in the Covid-19 unit was grueling and the devastation and death that he witnessed were unprecedented in his medical career.

***The Eruption of Racial Justice Protests in New York City***

24.     On May 25, 2020, George Floyd, a 46-year-old Black man, was killed by a white Minneapolis police officer.  Video of the incident shows the officer pressing his knee into Mr. Floyd's neck for 9 minutes and 29 seconds, while Mr. Floyd repeatedly states, "I can't breathe."

25.     Soon after video of the horrific killing of Mr. Floyd began circulating, the country erupted in protests against police brutality.

26.     Protesters recognized Mr. Floyd's killing as part of a national crisis in policing.  Mr. Floyd was but one in a long list of unarmed Black people killed at the hands of law enforcement officers.

27.     Thousands of people began participating in protests every night across New York City.

5

28.     These protests were met with aggressive responses from the NYPD.

*A Curfew is Imposed on New York City*

29.     In response to the protests, on June 1, 2020, Mayor Bill de Blasio issued Executive Emergency Order No. 117, imposing an 11:00 p.m. curfew on the city.  On June 2, 2020, Mayor de Blasio issued Executive Emergency Order No. 119, which changed the curfew to begin at 8:00 p.m. each night and extended the curfew period through June 8, 2020.

30.     The Executive Order exempted "first responders and emergency medical technicians, individuals travelling to and from essential work and performing essential work" from the curfew.

31.     The Executive Order required that people in violation of the curfew be "order[ed] to disburse [sic]" before being arrested.

32.     On information and belief, on June 1, 2020, the NYPD issued an internal announcement instructing that enforcement of the curfew "will only be taken after several warnings are issued and the violator is refusing to comply."

*Mr. Lopez Joins a Peaceful Protest on June 3, 2020*

33.     On the evening of June 3, 2020, Mr. Lopez's last day in New York, Mr. Lopez observed a group of protesters gathering in the street from his hotel room in downtown Brooklyn.

34.     Mr. Lopez decided to join the protest.

35.     Mr. Lopez joined the group of demonstrators at the Barclay's Center in downtown Brooklyn around 7:50 p.m.

36.     Mr. Lopez felt inspired to be part of a group of hundreds of people peacefully demanding justice and equality.

37.    The group left the Barclay's Center and marched north through Downtown Brooklyn towards the Manhattan Bridge.

38.    NYPD officers followed the protesters from the Barclay's Center.

39.    Around 9:00 p.m. the protest halted at Cadman Plaza.

40.    Mr. Lopez noticed a heavy NYPD presence amassing, including approximately 100 officers and numerous police vans and cars.

41.    The NYPD officers were dressed in riot gear, wearing helmets and shields, and had their batons drawn.

42.    At the time, Mr. Lopez was standing on the sidewalk near the intersection of Pierrepont Street and Cadman Plaza West.

43.    Mr. Lopez was holding a sign in his left hand and was recording video of the protest on his phone with his right hand.

***NYPD Officers Attack the Protesters, Including Mr. Lopez***

44.    Suddenly, Mr. Lopez saw NYPD officers move towards the group of protesters and begin aggressively pushing into protesters, including with shields and batons.

45.    The NYPD did not give any order to disperse before officers began charging at the protesters.

46.    As the NYPD officers began attacking the protesters, Mr. Lopez continued to film from the sidewalk.

47.    To his right, Mr. Lopez saw Defendant Doe #1, a large NYPD officer wearing a white shirt, violently push a young woman holding a bicycle to the ground.

48.    Mr. Lopez was shocked to see Defendant Doe #1 brutally attack an unarmed and small woman.

7

49.     In protest, Mr. Lopez cried out: "Hey!"

50.     Mr. Lopez did not make any movements and continued to record using his right hand and to hold his sign in his left.

51.     Immediately after Mr. Lopez protested Defendant Doe #1's conduct, Doe #1 turned towards Mr. Lopez, pointed at him, and shouted, "Arrest him!"

52.     Defendant Doe #1 ordered Mr. Lopez' arrest.

53.     Defendant Doe #1 arrested Mr. Lopez in retaliation for Mr. Lopez's protest of Doe #1's brutal conduct, and because Mr. Lopez was lawfully filming that misconduct.

54.     Defendant Doe #1 did not provide any warning or instruction to disperse to Mr. Lopez prior to ordering his arrest.

55.     Defendant Doe #1 moved towards Mr. Lopez.

56.     Immediately, and without warning, Defendants Gamble and Doe #2 attacked Mr. Lopez from behind.

57.     Defendants Gamble and/or Doe #2 struck Mr. Lopez on his head with a baton and tackled him to the ground with extreme force.  Because they attacked him from behind, Mr. Lopez could not see which officer struck him with the baton.

58.     Mr. Lopez's right wrist hit the ground first, then his forehead.

59.     Mr. Lopez's surgical mask, which he had worn to protect himself and others from Covid-19 infection, was torn off in the attack.

60.     When Mr. Lopez was tackled, his cell phone fell out of his hand onto the ground, causing a small crack in the screen.

61.     Once on the ground, Defendant Gamble and/or Defendant Doe #2 forcefully pressed a knee or elbow into Mr. Lopez's left shoulder, causing immense pain.

8

62.    Defendant Gamble and/or Defendant Doe #2 pressed Mr. Lopez's face to the ground.  Mr. Lopez could not see which officer was attacking him.

63.    Still pressed to the ground, Mr. Lopez said, "I'm a front line worker, I'm a front line worker."

64.    Defendants Gamble and Doe #2 did not respond, other than to continue to press into Mr. Lopez's shoulder.

65.    Defendants Gamble and Doe #2 then secured Mr. Lopez's wrists together behind his back using zip ties.

66.    The zip ties were tied extremely tightly, causing Mr. Lopez further pain.

67.    Mr. Lopez asked Defendants Gamble and Doe #2, "Why am I being arrested?"

68.    Defendant Doe #2 responded, "Shut the fuck up."

69.    Defendant Gamble said, "You'll know when you get there."

70.    Defendants had no basis whatsoever to arrest Mr. Lopez.

71.    Defendants had no basis whatsoever to use force on Mr. Lopez.

72.    When he was arrested, hit, and tackled, Mr. Lopez was standing on the sidewalk and causing no disturbance.

73.    At no point did Mr. Lopez resist a lawful order, or any order, from the NYPD.

74.    At no point did Mr. Lopez resist arrest.

75.    Defendants Gamble and Doe #2 then roughly yanked Mr. Lopez up from the ground, pulling forcefully on his arms.

76.    Defendants Gamble and Doe #2 then walked Mr. Lopez to a New York

City bus parked about 100 yards away, flanking him on either side.

77.     On the way to the bus, Mr. Lopez asked Defendants Gamble and Doe #2 for a face mask to replace the one that had been torn off when he was tackled.

78.     Mr. Lopez wanted a face mask in order to protect himself against Covid-19 and to prevent the spread of the virus.

79.     Defendants Gamble and Doe #2 did not provide Mr. Lopez with a mask.

80.     This put him at risk of contracting Covid-19.

81.     At all relevant times, Defendants Gamble and Doe #2 were not wearing face masks.

82.     Once at the bus, Defendants Gamble and Doe #2 handed Mr. Lopez off to Defendant Doe #3, another NYPD officer, and quickly moved away.

83.     That officer also did not wear a face mask.

***Mr. Lopez is Detained for Hours***

84.     Mr. Lopez was detained on the City bus for approximately one-and-a-half to two hours.

85.     Mr. Lopez was detained along with approximately seven to eight other people who had also been arrested at the protest.

86.     On the bus, Mr. Lopez asked Defendants Doe #3, Doe #4, and Kamalic for a face mask to protect himself from Covid-19 and to stop the spread of the virus.

87.     Defendants Doe #3, Doe #4, and Kamalic refused to provide Mr. Lopez a face mask.

88.     At no point on the bus did the NYPD provide Mr. Lopez a face mask.

89.     Several other people on the bus suffered from serious injuries inflicted by

NYPD officers at the protest.

90.    Mr. Lopez repeatedly asked Defendants Doe #3, Doe #4, and Kamalic on the bus for medical attention for his head injury.

91.    Mr. Lopez had visible scratches on his neck and head and bruising on his forehead.

92.    Mr. Lopez knew that getting prompt medical attention would be important if he had a head bleed.

93.    Mr. Lopez told Defendants Doe #3, Doe #4, and Kamalic that he was concerned that he might have a head bleed and asked that he be taken to get a CT scan.

94.    Mr. Lopez also asked Defendants Doe #3, Doe #4, and Kamalic to provide medical attention to others on the bus who were injured, including a woman who was bleeding from her head and a man with a broken arm.

95.    Defendants Doe #3, Doe #4, and Kamalic refused to give Mr. Lopez any medical attention.

96.    At around midnight, Mr. Lopez was taken to a police station in downtown Brooklyn.

97.    Mr. Lopez was taken off the bus to wait in a long line outside the station.

98.    NYPD officers zip tied Mr. Lopez to three other men.

99.    Defendants Doe #5 and Doe #6 were assigned to Mr. Lopez and the group of men to which he was tied.

100.    Mr. Lopez waited in this line for approximately one to one-and-a-half-hours.

11

101.    While waiting in line, Mr. Lopez again repeatedly asked Defendants Doe #5 and Doe #6 for a face mask, to protect against Covid-19.

102.    Again, Defendants Doe #5 and Doe #6 failed to give Mr. Lopez a mask.

103.    While in line, Mr. Lopez also requested Defendants Doe #5 and Doe #6 that he be seen by a medical professional for his head injury, which was caused by Defendant Gamble and Defendant Doe #2's attack at the protest.

104.    Mr. Lopez did not receive any medical care while in line.

105.    Mr. Lopez also told Defendants Doe #5 and Doe #6 that his restraints were tied so tightly that he had lost feeling in his fingers.

106.    Mr. Lopez repeatedly asked that his zip ties be loosened or replaced by regular handcuffs.

107.    For the first hour that Mr. Lopez waited in line, Defendants Doe #5 and Doe #6 repeatedly denied this request.

108.    Finally, about fifteen minutes before Mr. Lopez entered the station, Defendant Doe #5 removed his zip ties and replaced them with metal handcuffs.

109.    Once inside the police station, Mr. Lopez was booked, questioned by a detective, and held in several different cells with other men.

110.    At no point was Mr. Lopez provided a face mask to protect him from Covid-19.

***Mr. Lopez is Released with a Summons and Returns to Washington State***

111.    At about 2:45 a.m. on June 4, 2020, Defendant Kamalic, without probable cause and with malice, issued Mr. Lopez a Criminal Court Appearance Ticket.

112.    Mr. Lopez was released shortly thereafter.

113.    Mr. Lopez's Criminal Court Appearance Ticket listed his only offense as "curfew" and directed him to appear in Kings & New York Criminal Court on September 30, 2020.

114.    Once Mr. Lopez was released, medical workers from an aid station outside the police station escorted him back to his hotel on foot.

115.    Mr. Lopez had a previously scheduled flight home to Washington at 11:00 a.m. that morning, June 4, 2020.

116.    Mr. Lopez knew he needed medical attention for his head injury, but did not want to risk missing his flight.

117.    Once onboard his flight, the reality of what had happened began to sink in and Mr. Lopez collapsed in tears.  He was shocked and devastated by the brutality and mistreatment he experienced.

118.    On September 9, 2020, Mr. Lopez's charge was dismissed in Kings County Criminal Court Part SAP-D.

***Mr. Lopez's Lasting Physical and Emotional Damages***

119.    Mr. Lopez has experienced significant physical and psychological distress because of the Individual Defendants' unprovoked and unjustified attack.

120.    The morning of June 5, 2020, once back in Washington, Mr. Lopez sought medical attention for his injuries at Tacoma General Hospital.

121.    There, following a CT scan of his head and x-ray of his right hand, he was diagnosed with a mild closed head injury, sprain and strain of his right hand, abrasions of multiple sites, and elevated blood pressure.

122.    For months following the attack, Mr. Lopez experienced chest pain; pain

and numbness in his left shoulder, arm, and hand; pain in his right wrist; and generalized muscular skeletal discomfort.

123.   Mr. Lopez continued to seek medical treatment to address these injuries in the months that followed.

124.   Mr. Lopez has spent thousands of dollars on medical care for the physical injuries he sustained at the hands of Defendants.

125.   Mr. Lopez's usually active lifestyle has been significantly affected by the physical injuries caused by Defendants' attack.

126.   Mr. Lopez can no longer practice yoga and engage in outdoor sports, such as mountaineering and running, without experiencing pain and discomfort.

127.   Mr. Lopez also experienced difficulty completing some physical tasks required by his job as a respiratory therapist because of the injuries caused by Defendants.

128.   In addition to his physical injuries, Mr. Lopez has experienced significant psychological and emotional distress due to Defendants' actions.

129.    In the months that followed June 3, Mr. Lopez experienced stress, anxiety, and depression.

130.   Mr. Lopez was emotionally devastated by Defendants' actions.  He felt disillusioned, angry, shocked, and scared.

131.   Mr. Lopez continues to seek counseling through a men's group for the trauma he experienced at the hands of Defendants.

132.   Because of the physical and emotional effects of Defendants' actions, Mr. Lopez was unable to return to work for approximately three weeks, causing him to lose significant income.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Excessive Force
(Against Defendants Gamble and Doe #2)

133.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

134.    By reason of the foregoing, and by striking, pushing, tackling, manhandling, pinning to the ground, kneeing and/or elbowing, and forcefully restraining Plaintiff, Defendants Gamble and John Doe #2 used unreasonable and excessive force under the circumstances they confronted.

135.    At all relevant times, Defendants Gamble and John Doe #2 acted under color of state law within the scope of their employment as police officers for the New York City Police Department.

136.    Plaintiff did not pose any threat to the safety of Defendants Gamble, John Doe #2, or others.  Plaintiff was unarmed.  Plaintiff made no sudden movements.  At all relevant times, Plaintiff's hands were visible, holding a sign in one and his phone in the other.

137.    Defendants Gamble and John Doe #2 acted beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.  Striking Plaintiff with a baton, tackling him to the ground, pressing a knee and/or elbow forcefully into his shoulder, yanking him to stand, and tightly tying his hands behind him were gratuitous uses of force that were vastly out of proportion to any danger Plaintiff could have posed.

138.    As a direct and proximate result of Defendants Gamble and John Doe #2's misconduct detailed above, Plaintiff sustained the damages hereinbefore alleged.

15

## SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
False Arrest
(Against Defendants Gamble and Does #1-2)

139.    Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

140.    Defendants Gamble, Doe #1, and Doe #2 wrongfully and illegally arrested Plaintiff and falsely charged Plaintiff with a crime.

141.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

142.    Neither Defendants Gamble, Doe #1,  Doe #2, nor any other NYPD officer, issued a dispersal order to Plaintiff before arresting him and charging him with a curfew violation, as required by Emergency Executive Order No. 119.

143.    Defendants Gamble, Doe #1, and Doe #2  knew they lacked probable cause to arrest Plaintiff because they knew that a dispersal warning was required prior to making any arrests for violation of the curfew, but they did not issue any such warning.

144.    No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

145.    At all relevant times, Defendants Gamble, Doe #1, and Doe #2 acted forcibly in apprehending and arresting Plaintiff.

146.    Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged.  At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

147.    All this occurred without any fault or provocation on the part of Plaintiff.

16

148.     Defendants Gamble, Doe #1, and Doe #2 acted under pretense and color of state law.  Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

149.     The conduct of Defendants Gamble, Doe #1, and Doe #2  was willful, wanton, and reckless.

150.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(Against Defendant Kamalic)

151.     Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

152.     Defendant Kamalic maliciously and without justification commenced criminal proceedings against Plaintiff.

153.     Defendant Kamalic issued a summons to Plaintiff for violation of Executive Order No. 119.

154.     Defendant Kamalic charged Plaintiff falsely, maliciously, in bad faith, and without probable cause.

155.     Defendant Kamalic acted with malice, and knew or was deliberately and recklessly indifferent to the truth that he lacked probable cause to arrest, issue a summons to, and prosecute Plaintiff, and that no reliable information suggested he had committed any offense.

156.     No reasonable officer would have believed there was probable cause to

17

prosecute Plaintiff under these circumstances.

157.    The summons required Plaintiff to appear in court on pain of criminal prosecution.

158.    On September 9, 2020, the prosecution terminated in Plaintiff's favor when the summons issued to him on June 3, 2020 was dismissed.

159.    Defendant Kamalic acted under pretense and color of state law.  He acted in abuse of his powers and beyond the scope of his authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

160.    Defendant Kamalic's conduct was willful, wanton, and reckless.

161.    As a direct and proximate result of Defendant Kamalic's actions, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
42 U.S.C. § 1983 – First Amendment
First Amendment Retaliation
(Against Defendants Gamble and Does #1-2)

162.    Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

163.    Plaintiff engaged in activity protected by the First Amendment, including but not limited to participating in and filming a peaceful protest and speaking out against the police brutality of Defendant Doe #1 against a fellow protester.

164.    Defendant Doe #1's action in ordering Plaintiff's arrest and Defendant Gamble and Defendant Doe #2's actions in executing that arrest with excessive force were motivated or substantially caused by Plaintiff's exercise of his First Amendment protected rights, including his right to protest, to film the police, and to complain to public officials.

165.     These Defendants' arrest of Plaintiff and use of excessive force had the purpose and effect of chilling Plaintiff's exercise of his free speech rights, protected by the First Amendment.

166.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
Common Law Negligence/Denial of Medical Care
(Against All Defendants)

167.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

168.     At all times relevant to this Complaint, Defendants owed a duty to Plaintiff to meet the standard of care owed to people detained before trial and/or to ensure that those under their supervision were trained adequately regarding the proper care of such detained people.  This included the prevention of Covid-19 among detained people and the implementation of adequate policies and procedures regarding the proper care of such detained people and the prevention of Covid-19 among detained people.  The standard of care required, among other things, proper treatment of Plaintiff's various injuries, provision of a face mask to Plaintiff, and ensuring that NYPD officers and detainees took appropriate precautions, including wearing face masks while near others, to protect against the spread of Covid-19.

169.     Defendants negligently and/or wantonly breached and violated this standard of care, or caused it to be violated, by denying Plaintiff access to adequate medical care, failing and refusing to provide medical treatment, failing to provide a face mask to protect against Covid-19, failing to wear face masks themselves, and/or otherwise neglecting his medical needs.  Defendants abused their power and failed to perform their duties in good faith.

170.     Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

171.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Common Law Assault
(Against Defendants Gamble, Doe #2, and City of New York)

172.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

173.     By reason of the foregoing, Defendants Gamble and Doe #2, acting in their capacity as New York City Police Officers and within the scope of their employment as such, intentionally placed Plaintiff in apprehension of an imminent offensive contact and displayed the ability to effectuate such contact, and thereby committed a willful, unlawful, unwarranted, and intentional assault upon Plaintiff.

174.     The assault committed by Defendants Gamble and Doe #2 was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

175.     Defendant City of New York, as the employer of Defendants Gamble and Doe #2, is liable for their use of excessive force against Plaintiff under the doctrine of *respondeat superior*.

176.     As a direct and proximate result of the misconduct of Defendants Gamble and Doe #2 detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Common Law Battery
(Against Defendants Gamble, Doe #2, and City of New York)

177.     Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

178.     By reason of the foregoing and by striking, pushing, tackling, manhandling, pinning to the ground, kneeing and/or elbowing, and forcefully restraining Plaintiff, Defendants Gamble and John Doe #2, acting in their capacity as NYPD officers, and within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Plaintiff.

179.     The battery committed by Defendants Gamble and John Doe #2 was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

180.     Defendant City of New York, as employer of Defendants Gamble and Doe #2, is liable for their wrongdoing under the doctrine of *respondeat superior*.

181.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Common Law Malicious Prosecution
(Against Defendants Kamalic and City of New York)

182.     Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

183.     Defendant Kamalic, acting in his capacity as an NYPD officer and within the scope of his employment as such, maliciously commenced criminal proceedings against Plaintiff.

184.    Defendant Kamalic issued a summons to Plaintiff for violation of Executive Order No. 119.

185.    Defendant Kamalic charged Plaintiff falsely, in bad faith, and without probable cause.

186.    Defendant New York City, as employer of Defendant Kamalic, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

187.    On September 9, 2020, the prosecution terminated in Plaintiff's favor when the summons issued to him on June 3, 2020 was dismissed.

188.    As a direct and proximate result of Defendant Kamalic's actions, Plaintiff sustained the damages hereinbefore alleged.

*       *       *

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.   Compensatory damages in an amount to be determined at trial;

b.   Punitive damages against the Individual Defendants in an amount to be determined at trial;

c.   Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d.   Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        May 5, 2021

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: _____ /s _____

Ilann M. Maazel
Scout Katovich

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff Ernesto Lopez*