UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERNESTO LOPEZ,

                    Plaintiff,

        -against-

**AMENDED COMPLAINT AND
JURY TRIAL DEMAND**

NEW YORK CITY POLICE DEPARTMENT
DETECTIVE JOHN GAMBLE, tax
identification number 915764, in his individual
capacity; NEW YORK CITY POLICE
DEPARTMENT OFFICER STEVEN
KAMALIC, tax identification number 960740,
in his individual capacity; NEW YORK CITY
POLICE DEPARTMENT CAPTAIN TARIK
SHEPPARD, in his individual capacity; NEW
YORK CITY POLICE DEPARTMENT
OFFICER JOHN JONADEL DORREJO, shield
number 3595, in his individual capacity; NEW
YORK CITY POLICE DEPARTMENT
OFFICER FRANK RUSSO, shield number
14935, in his individual capacity; NEW YORK
CITY POLICE DEPARTMENT OFFICER
STEVEN GESSNER, shield number 967082, in
his individual capacity; NEW YORK CITY
POLICE DEPARTMENT DETECTIVE
DARNAY HARRIS, in his individual capacity;
NEW YORK CITY POLICE DEPARTMENT
OFFICER DANIELLE MOSES, shield number
number 1105, in her individual capacity; NEW
YORK CITY POLICE DEPARTMENT
OFFICER MICHAEL SAID, shield number
11735, in his individual capacity; NEW YORK
CITY POLICE DEPARTMENT OFFICER
PETER DAMATO, in his individual capacity;
NEW YORK CITY POLICE DEPARTMENT
OFFICER JAY SANTOS, shield number 2457,
in his individual capacity; NEW YORK CITY
POLICE DEPARTMENT OFFICER
GUSTAVO JARAMILLO, shield number 1528,
in his individual capacity; NEW YORK CITY

1

POLICE DEPARTMENT OFFICER "JOHN DOE", in his individual capacity; THE CITY OF NEW YORK,

Defendants.

Plaintiff Ernesto Lopez, by and through his attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, alleges as follows for his complaint:

**PRELIMINARY STATEMENT**

1.      On June 3, 2020, while temporarily in New York City working as a respiratory therapist in a Covid-19 hospital unit, Plaintiff Ernesto Lopez joined a peaceful protest against police brutality in downtown Brooklyn.  Like millions of Americans across the country, Mr. Lopez was outraged and dismayed by the images he had seen of unjustified police violence. Sadly, his attempt to peacefully exercise his right to speak out about such violence was met by the same brutal and unjustified police behavior against which he protested.

2.      Around 9:00 p.m. that night, the peaceful protest Mr. Lopez had joined was surrounded by New York Police Department ("NYPD") officers at Cadman Plaza in Brooklyn.  Suddenly, unprovoked, and without warning, the officers violently assaulted and indiscriminately arrested protesters.

3.      On information and belief, Mr. Lopez witnessed Defendant Sheppard violently shove a nearby woman to the ground.  In response, Mr. Lopez protested, "Hey!" while continuing to hold a sign in one hand and record video with his phone in the other.  Mr. Lopez did not make any movements or present any threat to Defendant Sheppard or others.  On

information and belief, Defendant Sheppard immediately turned to Mr. Lopez, pointed at him, and ordered, "Arrest him!"  Sheppard gave no prior order to Mr. Lopez.

4.      Within seconds, Defendant Gamble and, on information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe brutally attacked Mr. Lopez from behind, striking his head with a baton and tackling him to the ground, while the others failed to intervene to prevent this attack.  After Mr. Lopez was on the ground, Defendant Gamble and, on information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe forcefully restrained Mr. Lopez's hands, tying the zip ties so tightly that Mr. Lopez lost feeling in his hands.  Defendant Gamble and, on information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe also caused Mr. Lopez's face mask to fall off during this assault.  Mr. Lopez wore the mask to protect himself from Covid-19.

5.      Mr. Lopez spent the next six hours in NYPD detention.  Despite repeated requests for medical attention for his injuries, including to his head, Mr. Lopez received none.  The NYPD also refused Mr. Lopez's request for a face mask to protect against Covid-19.  As a result, Defendants put Mr. Lopez at serious risk of contracting this potentially deadly disease.

6.      When Mr. Lopez was finally released, Defendant Kamalic gave him a summons for violation of the curfew imposed on New York City the day before by Emergency Executive Order No. 119 (the "Executive Order").  The Executive Order, however, required an order to disperse; here there was none.  Mr. Lopez's summons was subsequently dismissed without explanation.

7.      Defendants' unlawful actions caused Mr. Lopez physical injuries and emotional distress that linger with him to this day.  Mr. Lopez now seeks redress for Defendants' unwarranted brutality and shameful abuse of authority.

3

## THE PARTIES

8.      Plaintiff Ernesto Lopez is a citizen of the United States and a 43-year-old man who currently resides in Tacoma, Washington.  At the time of the actions described in this Complaint, Mr. Lopez was staying in a hotel in Brooklyn, New York, while working on a temporary basis as a Covid-19 respiratory therapist in New York City.

9.      Defendant NYPD Detective John Gamble, tax identification number 915764, was, at all times relevant to this Complaint, a police detective employed by the City of New York.  In this role, Detective Gamble was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

10.      Defendant NYPD Officer Steven Kamalic, tax identification number 960740, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Kamalic was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

11.      Defendant NYPD Captain Tarik Sheppard, tax identification number unknown, was, at all times relevant to this Complaint, a police captain employed by the City of New York.  In this role, Captain Sheppard was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

12.      Defendant NYPD Officer John Jonadel Dorrejo, shield number 3595, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Dorrejo was a duly appointed and acting officer, servant, employee, and/or

4

agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

13.     Defendant NYPD Officer Frank Russo, shield number 14935, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Russo was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

14.     Defendant NYPD Officer Steven Gessner, shield number 967082, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Gessner was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

15.     Defendant NYPD Detective Darnay Harris, tax identification number unknown, was, at all times relevant to this Complaint, a police detective employed by the City of New York.  In this role, Detective Harris was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

16.     Defendant NYPD Officer Danielle Moses, shield number 1105, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Moses was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, she was acting within the scope of her employment and under color of state law.

17.     Defendant NYPD Officer Michael Said, shield number 11735, was, at all

times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Said was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

18.     Defendant NYPD Officer Peter Damato, shield number unknown, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Damato was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

19.     Defendant NYPD Officer Jay Santos, shield number 2457, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Santos was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

20.     Defendant NYPD Officer Gustavo Jaramillo, shield number 1528, was, at all times relevant to this Complaint, a police officer employed by the City of New York.  In this role, Officer Jaramillo was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, he was acting within the scope of his employment and under color of state law.

21.     Defendant Police Officer John Doe, name and shield number unknown, was at all relevant times an officer of the NYPD, and was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York.  At all relevant times, Defendant Doe was acting within the scope of his employment and under color of state law.  Defendant Doe is

sued in his individual capacity.

22.     Defendants Gamble, Kamalic, Sheppard, Dorrejo, Russo, Gessner, Harris, Moses, Said, Damato, Santos, Jaramillo, and John Doe are collectively referred to as the "Individual Defendants."

23.     Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York.  At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel, including the Individual Defendants, obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

24.     This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

25.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

26.     The acts complained of occurred in the Eastern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

27.     Plaintiff demands trial by jury.

## FACTUAL ALLEGATIONS

*Mr. Lopez Travels to New York to Help with the Covid-19 Outbreak*

28.     Plaintiff Ernesto Lopez is a 43-year-old respiratory therapist based in

Tacoma, Washington.

29.     In April 2020, Mr. Lopez took a leave of absence from his full-time job at Virginia Mason Hospital in Seattle, Washington to work on the frontlines of the Covid-19 outbreak in New York City.

30.     At the time, New York City was the city in America worst hit by Covid-19.

31.     Mr. Lopez knew that his skills as a respiratory therapist were desperately needed in New York.

32.     Mr. Lopez accepted a short-term contract with NYU Langone Hospital's Covid-19 unit.

33.     Mr. Lopez's work in the Covid-19 unit was grueling and the devastation and death that he witnessed were unprecedented in his medical career.

***The Eruption of Racial Justice Protests in New York City***

34.     On May 25, 2020, George Floyd, a 46-year-old Black man, was killed by a white Minneapolis police officer.  Video of the incident shows the officer pressing his knee into Mr. Floyd's neck for 9 minutes and 29 seconds, while Mr. Floyd repeatedly states, "I can't breathe."

35.     Soon after video of the horrific killing of Mr. Floyd began circulating, the country erupted in protests against police brutality.

36.     Protesters recognized Mr. Floyd's killing as part of a national crisis in policing.  Mr. Floyd was but one in a long list of unarmed Black people killed at the hands of law enforcement officers.

37.     Thousands of people began participating in protests every night across

8

New York City.

38.     These protests were met with aggressive responses from the NYPD.

*A Curfew is Imposed on New York City*

39.     In response to the protests, on June 1, 2020, Mayor Bill de Blasio issued Executive Emergency Order No. 117, imposing an 11:00 p.m. curfew on the city.  On June 2, 2020, Mayor de Blasio issued Executive Emergency Order No. 119, which changed the curfew to begin at 8:00 p.m. each night and extended the curfew period through June 8, 2020.

40.     The Executive Order exempted "first responders and emergency medical technicians, individuals travelling to and from essential work and performing essential work" from the curfew.

41.     The Executive Order required that people in violation of the curfew be "order[ed] to disburse [sic]" before being arrested.

42.     On information and belief, on June 1, 2020, the NYPD issued an internal announcement instructing that enforcement of the curfew "will only be taken after several warnings are issued and the violator is refusing to comply."

*Mr. Lopez Joins a Peaceful Protest on June 3, 2020*

43.     On the evening of June 3, 2020, Mr. Lopez's last day in New York, Mr. Lopez observed a group of protesters gathering in the street from his hotel room in downtown Brooklyn.

44.     Mr. Lopez decided to join the protest.

45.     Mr. Lopez joined the group of demonstrators at the Barclay's Center in downtown Brooklyn around 7:50 p.m.

46.     Mr. Lopez felt inspired to be part of a group of hundreds of people

peacefully demanding justice and equality.

47.     The group left the Barclay's Center and marched north through Downtown Brooklyn towards the Manhattan Bridge.

48.     NYPD officers followed the protesters from the Barclay's Center.

49.     Around 9:00 p.m. the protest halted at Cadman Plaza.

50.     Mr. Lopez noticed a heavy NYPD presence amassing, including approximately 100 officers and numerous police vans and cars.

51.     The NYPD officers were dressed in riot gear, wearing helmets and shields, and had their batons drawn.

52.     At the time, Mr. Lopez was standing on the sidewalk near the intersection of Pierrepont Street and Cadman Plaza West.

53.     Mr. Lopez was holding a sign in his left hand and was recording video of the protest on his phone with his right hand.

***NYPD Officers Attack the Protesters, Including Mr. Lopez***

54.     Suddenly, Mr. Lopez saw NYPD officers move towards the group of protesters and begin aggressively pushing into protesters, including with shields and batons.

55.     The NYPD did not give any order to disperse before officers began charging at the protesters.

56.     As the NYPD officers began attacking the protesters, Mr. Lopez continued to film from the sidewalk.

57.     To his right, Mr. Lopez saw a large NYPD captain wearing a white shirt, on information and belief Defendant Sheppard, violently push a young woman holding a bicycle to the ground.

58.     Mr. Lopez was shocked to see Defendant Sheppard brutally attack an

unarmed and small woman.

59.     In protest, Mr. Lopez cried out: "Hey!"

60.     Mr. Lopez did not make any movements and continued to record using his

right hand and to hold his sign in his left.

61.     On information and belief, immediately after Mr. Lopez protested

Defendant Sheppard's conduct, Defendant Sheppard turned towards Mr. Lopez, pointed at him,

and shouted, "Arrest him!"

62.     On information and belief, Defendant Sheppard ordered Mr. Lopez' arrest.

63.     On information and belief, Defendant Sheppard arrested Mr. Lopez in

retaliation for Mr. Lopez's protest of Defendant Sheppard's brutal conduct, and because Mr.

Lopez was lawfully filming that misconduct.

64.     On information and belief, Defendant Sheppard did not provide any

warning or instruction to disperse to Mr. Lopez prior to ordering his arrest.

65.     On information and belief, Defendant Sheppard moved towards Mr.

Lopez.

66.     At the time, a number of NYPD officers, who on information and belief

are Defendants Gamble, Dorrejo, Russo, Gessner, and John Doe, were all standing or walking

within feet of Defendant Sheppard and Mr. Lopez.

67.     Immediately, and without warning, Defendant Gamble and, on

information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe attacked Mr.

Lopez from behind.

68.     On information and belief, Defendant Gamble and/or one of Defendants

11

Dorrejo, Russo, Gessner, or John Doe struck Mr. Lopez on his head with a baton and tackled him to the ground with extreme force.  Because they attacked him from behind, Mr. Lopez could not see which officer struck him with the baton.

69.     Mr. Lopez's right wrist hit the ground first, then his forehead.

70.     Mr. Lopez's surgical mask, which he had worn to protect himself and others from Covid-19 infection, was torn off in the attack.

71.     When Mr. Lopez was tackled, his cell phone fell out of his hand onto the ground, causing a small crack in the screen.

72.     On information and belief, once on the ground, Defendant Gamble and/or one of Defendants Dorrejo, Russo, Gessner, or John Doe forcefully pressed a knee or elbow into Mr. Lopez's left shoulder, causing immense pain.

73.     On information and belief, Defendant Gamble and/or one of Defendants Dorrejo, Russo, Gessner, or John Doe pressed Mr. Lopez's face to the ground.  Mr. Lopez could not see which officer was attacking him.

74.     Still pressed to the ground, Mr. Lopez said, "I'm a front line worker, I'm a front line worker."

75.     On information and belief, Defendants Gamble and/or one of Defendants Dorrejo, Russo, Gessner, or John Doe did not respond, other than to continue to press into Mr. Lopez's shoulder.

76.     On information and belief, Defendants Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe then secured Mr. Lopez's wrists together behind his back using zip ties.

77.     The zip ties were tied extremely tightly, causing Mr. Lopez further pain.

12

78.     Mr. Lopez asked Defendant Gamble and, on information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe, "Why am I being arrested?"

79.     On information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe responded, "Shut the fuck up."

80.     Defendant Gamble said, "You'll know when you get there."

81.     Defendants had no basis whatsoever to arrest Mr. Lopez.

82.     Defendants had no basis whatsoever to use force on Mr. Lopez.

83.     When he was arrested, hit, and tackled, Mr. Lopez was standing on the sidewalk and causing no disturbance.

84.     At no point did Mr. Lopez resist a lawful order, or any order, from the NYPD.

85.     At no point did Mr. Lopez resist arrest.

86.     On information and belief, while Defendants Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe attacked Mr. Lopez, the other officers and Defendant Sheppard remained nearby.

87.     On information and belief, throughout the attack, Defendants Sheppard, Dorrejo, Russo, Gessner, and John Doe made no efforts to intervene, halt the attack, or protect Mr. Lopez.

88.     On information and belief, at no time did Defendants Sheppard, Dorrejo, Russo, Gessner, or John Doe attempt to stop their fellow officers' conduct, even though it was plainly an excessive use of force that was not warranted by any of Mr. Lopez's conduct.

89.     On information and belief, Defendants Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe then roughly yanked Mr. Lopez up from the ground,

pulling forcefully on his arms.

90.     Defendants Gamble and, on information and belief, Harris then walked Mr. Lopez to a New York City bus parked about 100 yards away, flanking him on either side.

91.     On the way to the bus, Mr. Lopez asked Defendants Gamble and, on information and belief, Harris for a face mask to replace the one that had been torn off when he was tackled.

92.     Mr. Lopez wanted a face mask in order to protect himself against Covid-19 and to prevent the spread of the virus.

93.     On information and belief, Defendants Gamble and Harris did not provide Mr. Lopez with a mask.

94.     This put him at risk of contracting Covid-19.

95.     On information and belief, at all relevant times, Defendants Gamble and Harris were not wearing face masks.

96.     On information and belief, once at the bus, Defendants Gamble and Harris handed Mr. Lopez off to Defendant Kamalic, and quickly moved away.

97.     Defendant Kamalic also did not wear a face mask.

***Mr. Lopez is Detained for Hours***

98.     Mr. Lopez was detained on the City bus for approximately one-and-a-half to two hours.

99.     Mr. Lopez was detained along with approximately seven to eight other people who had also been arrested at the protest.

100.     On the bus, Mr. Lopez asked the NYPD officers on the bus—on information and belief, Defendants Kamalic, Moses, Said, Damato, Santos, and Jaramillo—for a

14

face mask to protect himself from Covid-19 and to stop the spread of the virus.

101.   On information and belief, Defendants Kamalic, Moses, Said, Damato, Santos, and Jaramillo refused to provide Mr. Lopez a face mask.

102.   At no point on the bus did the NYPD provide Mr. Lopez a face mask.

103.   Several other people on the bus suffered from serious injuries inflicted by NYPD officers at the protest.

104.   Mr. Lopez repeatedly asked the NYPD officers on the bus—on information and belief, Defendants Kamalic, Moses, Said, Damato, Santos, and Jaramillo—for medical attention for his head injury.

105.   Mr. Lopez had visible scratches on his neck and head and bruising on his forehead.

106.   Mr. Lopez knew that getting prompt medical attention would be important if he had a head bleed.

107.   On information and belief, Mr. Lopez told Defendants Kamalic, Moses, Said, Damato, Santos, and Jaramillo that he was concerned that he might have a head bleed and asked that he be taken to get a CT scan.

108.   On information and belief, Mr. Lopez also asked Defendants Kamalic, Moses, Said, Damato, Santos, and Jaramillo to provide medical attention to others on the bus who were injured, including a woman who was bleeding from her head and a man with a broken arm.

109.   On information and belief, Defendants Kamalic, Moses, Said, Damato, Santos, and Jaramillo refused to give Mr. Lopez any medical attention.

110.   At around midnight, Mr. Lopez was taken to a police station in downtown

15

Brooklyn.

111.    Mr. Lopez was taken off the bus to wait in a long line outside the station.

112.    NYPD officers zip tied Mr. Lopez to three other men.

113.    On information and belief, Defendant Kamalic was assigned to Mr. Lopez and the group of men to which he was tied.

114.    Mr. Lopez waited in this line for approximately one to one-and-a-half-hours.

115.    On information and belief, while waiting in line, Mr. Lopez again repeatedly asked Defendant Kamalic for a face mask, to protect against Covid-19.

116.    On information and belief, again, Defendant Kamalic failed to give Mr. Lopez a mask.

117.    On information and belief, while in line, Mr. Lopez also requested Defendant Kamalic that he be seen by a medical professional for his head injury, which was caused by Defendant Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe's attack at the protest.

118.    Mr. Lopez did not receive any medical care while in line.

119.    On information and belief, Mr. Lopez also told Defendant Kamalic that his restraints were tied so tightly that he had lost feeling in his fingers.

120.    Mr. Lopez repeatedly asked that his zip ties be loosened or replaced by regular handcuffs.

121.    On information and belief, for the first hour that Mr. Lopez waited in line, Defendant Kamalic repeatedly denied this request.

122.    Finally, about fifteen minutes before Mr. Lopez entered the station, on

information and belief, Defendant Kamalic removed his zip ties and replaced them with metal handcuffs.

123.    Once inside the police station, Mr. Lopez was booked, questioned by a detective, and held in several different cells with other men.

124.    At no point was Mr. Lopez provided a face mask to protect him from Covid-19.

***Mr. Lopez is Released with a Summons and Returns to Washington State***

125.    At about 2:45 a.m. on June 4, 2020, Defendant Kamalic, without probable cause and with malice, issued Mr. Lopez a Criminal Court Appearance Ticket.

126.    Mr. Lopez was released shortly thereafter.

127.    Mr. Lopez's Criminal Court Appearance Ticket listed his only offense as "curfew" and directed him to appear in Kings & New York Criminal Court on September 30, 2020.

128.    Once Mr. Lopez was released, medical workers from an aid station outside the police station escorted him back to his hotel on foot.

129.    Mr. Lopez had a previously scheduled flight home to Washington at 11:00 a.m. that morning, June 4, 2020.

130.    Mr. Lopez knew he needed medical attention for his head injury, but did not want to risk missing his flight.

131.    Once onboard his flight, the reality of what had happened began to sink in and Mr. Lopez collapsed in tears.  He was shocked and devastated by the brutality and mistreatment he experienced.

132.     On September 9, 2020, Mr. Lopez's charge was dismissed in Kings County Criminal Court Part SAP-D.

***Mr. Lopez's Lasting Physical and Emotional Damages***

133.     Mr. Lopez has experienced significant physical and psychological distress because of Defendants' unprovoked and unjustified attack.

134.     The morning of June 5, 2020, once back in Washington, Mr. Lopez sought medical attention for his injuries at Tacoma General Hospital.

135.     There, following a CT scan of his head and x-ray of his right hand, he was diagnosed with a mild closed head injury, sprain and strain of his right hand, abrasions of multiple sites, and elevated blood pressure.

136.     For months following the attack, Mr. Lopez experienced chest pain; pain and numbness in his left shoulder, arm, and hand; pain in his right wrist; and generalized muscular skeletal discomfort.

137.     Mr. Lopez continued to seek medical treatment to address these injuries in the months that followed.

138.     Mr. Lopez has spent thousands of dollars on medical care for the physical injuries he sustained at the hands of Defendants.

139.     Mr. Lopez's usually active lifestyle has been significantly affected by the physical injuries caused by Defendants' attack.

140.     Mr. Lopez can no longer practice yoga and engage in outdoor sports, such as mountaineering and running, without experiencing pain and discomfort.

141.     Mr. Lopez also experienced difficulty completing some physical tasks required by his job as a respiratory therapist because of the injuries caused by Defendants.

18

142.     In addition to his physical injuries, Mr. Lopez has experienced significant psychological and emotional distress due to Defendants' actions.

143.      In the months that followed June 3, Mr. Lopez experienced stress, anxiety, and depression.

144.     Mr. Lopez was emotionally devastated by Defendants' actions.  He felt disillusioned, angry, shocked, and scared.

145.     Mr. Lopez continues to seek counseling through a men's group for the trauma he experienced at the hands of Defendants.

146.     Because of the physical and emotional effects of Defendants' actions, Mr. Lopez was unable to return to work for approximately three weeks, causing him to lose significant income.

***Mr. Lopez Timely Files a Notice of Claim***

147.     Within ninety days after Defendants' June 3, 2020 attack and arrest of Mr. Lopez, counsel for Mr. Lopez filed a Notice of Claim with the New York City Comptroller's Office.

148.     Mr. Lopez attended and testified at the hearing required under Section 50-H of the General Municipal Law on November 6, 2020, by video conference.

149.     This action  was commenced within one year and ninety days of the events upon which the claims are based.

**<u>FIRST CAUSE OF ACTION</u>**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Excessive Force
(Against Defendants Gamble, and one of Dorrejo, Russo, Gessner, or John Doe)

150.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

151.    By reason of the foregoing, and by striking, pushing, tackling, manhandling, pinning to the ground, kneeing and/or elbowing, and forcefully restraining Plaintiff, Defendant Gamble and, on information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe used unreasonable and excessive force under the circumstances they confronted while the others failed to intervene to halt the others' unlawful actions and protect Plaintiff.

152.    At all relevant times, Defendants Gamble, Dorrejo, Russo, Gessner, and John Doe acted under color of state law within the scope of their employment as police officers for the New York City Police Department.

153.    Plaintiff did not pose any threat to the safety of Defendants Gamble, Dorrejo, Russo, Gessner, John Doe, or others.  Plaintiff was unarmed.  Plaintiff made no sudden movements.  At all relevant times, Plaintiff's hands were visible, holding a sign in one and his phone in the other.

154.    Defendant Gamble and, on information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe acted beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution. Striking Plaintiff with a baton, tackling him to the ground, pressing a knee and/or elbow forcefully into his shoulder, yanking him to stand, tightly tying his hands behind him were gratuitous uses of force that were vastly out of proportion to any danger Plaintiff could have posed.

155.    As a direct and proximate result of Defendant Gamble and, on information and belief, one of Defendants Dorrejo, Russo, Gessner, or John Doe's misconduct detailed

above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Failure to Intervene
(Against Defendants Sheppard, Dorrejo, Russo, Gessner, or John Doe)

156.   Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

157.   NYPD officers have an affirmative duty to ensure the lawfulness of interactions between their fellow members of service and civilians, and to intervene when they observe another uniformed officer using excessive force against a civilian.

158.   On information and belief, Defendants Sheppard, Dorrejo, Russo, Gessner, and John Doe were present and witnessed their fellow officers using excessive force against Plaintiff.

159.   On information and belief, Defendants Sheppard, Dorrejo, Russo, Gessner, and John Doe each had a reasonable opportunity to intervene to prevent their fellow officers from using excessive force against Plaintiff.

160.   On information and belief, Defendants Sheppard, Dorrejo, Russo, Gessner, and John Doe failed to take any action or make any effort to intervene or halt the aforementioned unlawful actions and to protect Plaintiff.

161.   On information and belief, the failure to intervene by Defendants Sheppard, Dorrejo, Russo, Gessner, and John Doe proximately caused the violation of Plaintiff's constitutional rights.

162.   On information and belief, as a direct and proximate cause of the failure to intervene by Defendants Sheppard, Dorrejo, Russo, Gessner, and John Doe, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
False Arrest
(Against Defendants Sheppard and Gamble)

163.     Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

164.     On information and belief, Defendants Sheppard and Gamble wrongfully and illegally arrested Plaintiff and falsely charged Plaintiff with a crime.

165.     The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

166.     Neither Defendants Sheppard, Gamble, nor any other NYPD officer, issued a dispersal order to Plaintiff before arresting him and charging him with a curfew violation, as required by Emergency Executive Order No. 119.

167.     On information and belief, Defendants Sheppard and Gamble knew they lacked probable cause to arrest Plaintiff because they knew that a dispersal warning was required prior to making any arrests for violation of the curfew, but they did not issue any such warning.

168.     No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

169.     On information and belief, at all relevant times, Defendants Sheppard and Gamble acted forcibly in apprehending and arresting Plaintiff.

170.     Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged.  At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

171.     All this occurred without any fault or provocation on the part of Plaintiff.

22

172.     On information and belief, Defendants Sheppard and Gamble acted under pretense and color of state law.  Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

173.     On information and belief, the conduct of Defendants Sheppard and Gamble was willful, wanton, and reckless.

174.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(Against Defendant Kamalic)

175.     Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

176.     Defendant Kamalic maliciously and without justification commenced criminal proceedings against Plaintiff.

177.     Defendant Kamalic issued a summons to Plaintiff for violation of Executive Order No. 119.

178.     Defendant Kamalic charged Plaintiff falsely, maliciously, in bad faith, and without probable cause.

179.     Defendant Kamalic acted with malice, and knew or was deliberately and recklessly indifferent to the truth that he lacked probable cause to arrest, issue a summons to, and prosecute Plaintiff, and that no reliable information suggested he had committed any offense.

180. No reasonable officer would have believed there was probable cause to prosecute Plaintiff under these circumstances.

181. The summons required Plaintiff to appear in court on pain of criminal prosecution.

182. On September 9, 2020, the prosecution terminated in Plaintiff's favor when the summons issued to him on June 3, 2020 was dismissed.

183. Defendant Kamalic acted under pretense and color of state law. He acted in abuse of his powers and beyond the scope of his authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

184. Defendant Kamalic's conduct was willful, wanton, and reckless.

185. As a direct and proximate result of Defendant Kamalic's actions, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
42 U.S.C. § 1983 – First Amendment
First Amendment Retaliation
(Against Defendants Sheppard, Gamble, and one of Dorrejo, Russo, Gessner, or John Doe)

186. Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

187. Plaintiff engaged in activity protected by the First Amendment, including but not limited to participating in and filming a peaceful protest and speaking out against the police brutality of, on information and belief, Defendant Sheppard against a fellow protester.

188. On information and belief, Defendant Sheppard's action in ordering Plaintiff's arrest and Defendant Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe's actions in executing that arrest with excessive force were motivated or substantially

24

caused by Plaintiff's exercise of his First Amendment protected rights, including his right to

protest, to film the police, and to complain to public officials.

189.    These Defendants' arrest of Plaintiff and use of excessive force had the

purpose and effect of chilling Plaintiff's exercise of his free speech rights, protected by the First

Amendment.

190.    As a direct and proximate result of the misconduct and abuse of authority

detailed above, Plaintiff sustained the damages hereinbefore alleged.

**SIXTH CAUSE OF ACTION**
Common Law Negligence/Denial of Medical Care
(Against All Defendants)

191.    Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

192.    At all times relevant to this Complaint, Defendants owed a duty to

Plaintiff to meet the standard of care owed to people detained before trial and/or to ensure that

those under their supervision were trained adequately regarding the proper care of such detained

people.  This included the prevention of Covid-19 among detained people and the

implementation of adequate policies and procedures regarding the proper care of such detained

people and the prevention of Covid-19 among detained people.  The standard of care required,

among other things, proper treatment of Plaintiff's various injuries, provision of a face mask to

Plaintiff, and ensuring that NYPD officers and detainees took appropriate precautions, including

wearing face masks while near others, to protect against the spread of Covid-19.

193.    Defendants negligently and/or wantonly breached and violated this

standard of care, or caused it to be violated, by denying Plaintiff access to adequate medical care,

failing and refusing to provide medical treatment, failing to provide a face mask to protect

against Covid-19, failing to wear face masks themselves, and/or otherwise neglecting his medical needs.  Defendants abused their power and failed to perform their duties in good faith.

194.    Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

195.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Common Law Assault
(Against Defendants Gamble; one of Dorrejo, Russo, Gessner, or John Doe; and
City of New York)

196.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

197.    By reason of the foregoing, on information and belief, Defendant Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe, acting in their capacity as New York City Police Officers and within the scope of their employment as such, intentionally placed Plaintiff in apprehension of an imminent offensive contact and displayed the ability to effectuate such contact, and thereby committed a willful, unlawful, unwarranted, and intentional assault upon Plaintiff.

198.    The assault committed, on information and belief, by Defendant Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

199.    Defendant City of New York, as the employer of Defendants Gamble, Dorrejo, Russo, Gessner, and John Doe, is liable for their use of excessive force against Plaintiff under the doctrine of *respondeat superior*.

200.    As a direct and proximate result of the misconduct of, on information and belief, Defendant Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe detailed above, Plaintiff sustained the damages hereinbefore alleged.

### EIGHTH CAUSE OF ACTION
Common Law Battery
(Against Defendants Gamble; one of Dorrejo, Russo, Gessner, or John Doe; and
City of New York)

201.    Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

202.    By reason of the foregoing and by striking, pushing, tackling, manhandling, pinning to the ground, kneeing and/or elbowing, and forcefully restraining Plaintiff, on information and belief, Defendant Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe, acting in their capacity as NYPD officers, and within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Plaintiff.

203.    The battery committed by, on information and belief, Defendant Gamble and one of Defendants Dorrejo, Russo, Gessner, or John Doe was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

204.    Defendant City of New York, as employer of Defendants Gamble, Dorrejo, Russo, Gessner, and John Doe, is liable for their wrongdoing under the doctrine of *respondeat superior*.

205.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Common Law Malicious Prosecution
(Against Defendants Kamalic and City of New York)

206.    Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

207.    Defendant Kamalic, acting in his capacity as an NYPD officer and within the scope of his employment as such, maliciously commenced criminal proceedings against Plaintiff.

208.    Defendant Kamalic issued a summons to Plaintiff for violation of Executive Order No. 119.

209.    Defendant Kamalic charged Plaintiff falsely, in bad faith, and without probable cause.

210.    Defendant New York City, as employer of Defendant Kamalic, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

211.    On September 9, 2020, the prosecution terminated in Plaintiff's favor when the summons issued to him on June 3, 2020 was dismissed.

212.    As a direct and proximate result of Defendant Kamalic's actions, Plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Common Law False Arrest/False Imprisonment
(Against Defendants Sheppard, Gamble, and City of New York)

213.    Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

214.    On information and belief, Defendants Sheppard and Gamble wrongfully and illegally arrested Plaintiff.

28

215.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

216.    Neither Defendants Sheppard, Gamble, nor any other NYPD officer, issued a dispersal order to Plaintiff before arresting him.

217.    At minimum, a dispersal order would have been required to arrest Plaintiff with a curfew violation, as required by Emergency Executive Order No. 119.

218.    On information and belief, Defendants Sheppard and Gamble knew they lacked probable cause to arrest Plaintiff because they knew that a dispersal warning was required prior to making any arrests for violation of the curfew, but they did not issue any such warning.

219.    No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

220.    At all relevant times, on information and belief, Defendants Sheppard and Gamble acted forcibly in apprehending and arresting Plaintiff.

221.    Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged.  At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

222.    All this occurred without any fault or provocation on the part of Plaintiff.

223.    On information and belief, Defendants Sheppard and Gamble acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards Plaintiff.

224.    Defendant City of New York, as employer of Defendants Sheppard and

Gamble, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

225.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

\*       \*       \*

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.  Compensatory damages in an amount to be determined at trial;

b.  Punitive damages against the Individual Defendants in an amount to be determined at trial;

c.  Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d.  Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       November 3, 2021

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: _____ /s_____

Ilann M. Maazel
Scout Katovich

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff Ernesto Lopez*

30